UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SCOT MAY,**

       **Plaintiff,**　　　　　　　　　　Case No. 2:05-cv-918
　　　　　　　　　　　　　　　　　　　　JUDGE GREGORY L. FROST
   **v.**　　　　　　　　　　　　　　　　Magistrate Judge Terence P. Kemp

**PILOT TRAVEL CENTERS LLC,**

       **Defendant.**

## ORDER

This matter is before the Court for consideration of Plaintiff's October 23, 2006 Motion for Sanctions for Spoliation of Evidence (Doc. # 24), Defendant's combined memorandum in opposition, motion to strike, and motion for attorneys' fees (Doc. # 26), and Plaintiff's reply memorandum (Doc. # 29). For the reasons that follow, the Court **GRANTS** Plaintiff's motion for sanctions, **DENIES** Defendant's motion to strike, and **DENIES** Defendant's motion for attorneys' fees.

### I. Background

Defendant, Pilot Travel Centers LLC, is a nationwide retailer that operates gas stations and fast food restaurant franchises. Plaintiff, Scot May, worked for Defendant since 2000. At the time of the events giving rise to this lawsuit, Plaintiff worked as a restaurant general manager for a Wendy's franchise at one of Defendant's Columbus, Ohio locations.

Plaintiff's duties as general manager included the timely entry of vendor invoice information into a computerized system that would enable the corporate office to pay vendors. Plaintiff was also responsible for complying with Defendant's overtime policy, which provided

1

that all employees who worked in excess of forty hours per week received overtime compensation. To enable Plaintiff to correct timekeeping errors, Plaintiff had access to Defendant's computerized records, which meant that Plaintiff could manually adjust employees' hours. As part of his compensation package for fulfilling these and other duties, Plaintiff was eligible for a bonus that depended, in part, on Defendant's measurement of his performance on a weekly, monthly, and quarterly basis. One factor involved in the bonus calculation was the restaurant's financial performance, so that a higher quarterly profit produced a higher bonus. Another factor was whether Plaintiff managed labor costs within budget, which meant that preventing overtime pay from exceeding the budget meant a higher bonus for Plaintiff.

While serving as general manager, Plaintiff met with Regional Manager Richard Fletcher in May 2004. Plaintiff submitted a request for leave under the Family and Medical Leave Act ("FMLA") related to the birth of his son. Fletcher approved the leave, and Plaintiff's leave commenced on June 17, 2004.

In July 8, 2004, while Plaintiff was on leave, one of Defendant's food vendors, Sygma, contacted Defendant's accounting department regarding unpaid invoices. Defendant investigated the issue, and on July 9 Fletcher forwarded an e-mail containing the results of that investigation to Plaintiff and facility General Manager Brad Van Fleet. Thereafter, on July 12, Fletcher visited the Columbus facility that Plaintiff helped manage to investigate the complaints. Defendant asserts that after allegedly reviewing invoices and monthly invoice reports, Fletcher discovered a pattern of "rolling" invoices, or delaying entering the costs of delivered goods into the computer in order to artificially inflate a restaurant's apparent weekly profits, so that, for example, an April invoice was not paid until May. The rolled invoices were not paid until July,

which was in the next quarter. Fletcher allegedly learned that despite being on leave, Plaintiff was still processing the invoices during periodic visits to work. Fletcher also spoke with employees who allegedly complained that Plaintiff had altered their time records by deducting time for breaks they never took and by requiring them to work off the clock in order to avoid overtime compensation.

Fletcher met with Plaintiff on July 13, 2004 and informed Plaintiff of his findings. Plaintiff admitted to entering three late invoices, but denied any overtime impropriety. Fletcher informed Plaintiff to continue his leave without reporting for any work while Fletcher continued the investigation. Fletcher then reported his findings to Defendant's Human Resources Manager Al Jecker, who approved Fletcher's recommendation to terminate Plaintiff. Fletcher accordingly terminated Plaintiff on August 2, 2004.

Plaintiff subsequently initiated this lawsuit in the Franklin County Court of Common Pleas on September 19, 2005, asserting claims for FMLA retaliation and interference claims. (Doc. # 1, Ex. A.) Plaintiff claims that, in retaliation for his taking FMLA leave, Defendant falsely accused him of misconduct and terminated his employment. Defendant removed the action to this federal forum on October 5, 2005. (Doc. # 1.) Pursuant to the Preliminary Pretrial Order (Doc. # 9) and the Scheduling Order (Doc. # 10), the discovery period ended on July 14, 2006, and Defendant thereafter filed a pending motion for summary judgment (Doc. # 19).

After the parties had concluded briefing on that motion, Plaintiff then filed his October 23, 2006 motion for sanctions for spoliation of evidence (Doc. # 24), asking that this Court impose any number of sanctions including but not limited to default judgment against Defendant, to an adverse jury instruction concerning destroyed evidence, to the exclusion of testimony, as

well as awarding attorneys' fees and costs. Because disposition of the sanctions motion could affect the summary judgment decision, the Court held its summary judgment decision and ordered expedited briefing on the sanctions motion. (Doc. # 25.) The parties have completed briefing on the sanctions motion (Doc. # 24), which has produced two responsive motions by Defendant (Doc. # 26). The motions are now ripe for disposition.

## II. Plaintiff's Motion for Sanctions

Citing Federal Rule of Civil Procedure 37 and the Court's inherent authority, Plaintiff moves for sanctions on the grounds that Defendant has engaged in spoliation of evidence by failing to preserve relevant evidence that it relies on in defending this case and that would potentially have been favorable to Plaintiff. Plaintiff also alleges that Defendant has violated its duty to supplement or correct various discovery disclosures.

Defendant first argues that sanctions are not warranted because Rule 37 "simply does not apply" to the situation presented here and can not apply because Plaintiff never filed a motion to compel before moving for sanctions. (Doc. # 26, at 7.) Citing Local Civil Rules 37.1 and 37.2, Defendant in fact concludes that "Plaintiff's failure to file any discovery motion with the Court prevents him from now seeking sanctions under Rule 37." (Doc. # 26, at 2.)

Defendant does not understand the local civil rules upon which it relies. This Court's Local Rule 37.1 provides:

> Objections, motions, applications, and requests relating to discovery shall not be filed in this Court, under any provision in Rules 26 and 37, Fed. R. Civ. P., unless counsel have first exhausted among themselves all extrajudicial means for resolving the differences. After extrajudicial means for the resolution of differences about discovery have been exhausted, then in lieu of immediately filing a motion under Rules 26 and 37, Fed. R. Civ. P., and S.D. Ohio Civ. R. 37.2, any party may first seek an informal telephone conference with the judicial officer assigned to supervise discovery in the case.

S.D. Ohio Civ. R. 37.1.  On its face, Local Rule 37.1 thus contemplates one mandated step: that the parties exhaust among themselves all extrajudicial means for resolving any discovery dispute before filing any Rule 26 or 37 motion.  The parties' prior dealings indicate that no extrajudicial means exist for resolving their continuing disputes.  Local Rule 37.1 then contemplates one discretionary step: that if the inter-party discussions have failed, either party *may but is not required to* request an informal telephone conference before filing a motion.

>Local Rule 37.2 in turn provides:
>
>To the extent that extrajudicial means of resolution of differences have not disposed of the matter, parties seeking discovery or a protective order may then move for a protective order or a motion to compel discovery pursuant to Rule 26(c) or Rule 37(a), Fed. R. Civ. P.  Such motion shall be accompanied by a supporting memorandum and by a certification of counsel setting forth the extrajudicial means which have been attempted to resolve the differences.  Only those specific portions fo the discovery documents reasonably necessary to a resolution of the motion shall be included as an attachment to it.

S. D. Ohio Civ. R. 37.2.  The plaint text of this rule makes its inapplicability here obvious in two ways.  First, Plaintiff is not "seeking discovery or a protective order" as Local Rule 37.2 contemplates; rather, Plaintiff is seeking the imposition of sanctions.  Second, the local rule contemplates only motions filed specifically pursuant to Federal Rules of Civil Procedure 26(c) or 37(a), not a motion under Rule 37(c).  Thus, Local Rule 37.2 is inapplicable to Plaintiff's Rule 37(c) motion, and Defendant errs in trying to apply the rule in this context.

>Rule 37(c) provides in relevant part:
>
>A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Fed. R. Civ. P. 37(c)(1).  The 1993 Advisory Committee Notes to the rule state that subdivision

(c) "provides a self-executing sanction for failure to make a disclosure required by Rule 26(a), without the need for a motion under [Rule 37](a)(2)(A)."  In noting that a Rule 26(e)(2) violation falls within the scope of the post-2000 Rule 37(c)(1), the 2000 Advisory Committee Notes state that "[t]here is no obvious occasion for a Rule 37(a) motion in connection with a failure to supplement, and ordinarily only Rule 37(c)(1) exists as rule-based authority for sanctions if this supplementation obligation is violated."

Plaintiff's reply, coming after Defendant's curiously belated supplementation, clarifies that Plaintiff is indeed proceeding under Rule 37(c)(1).  Nothing in the Federal Rules of Civil Procedure or the Local Civil Rules of this District requires a plaintiff to file motions to compel or other similar motions to make a defendant meet the automatic, mandated obligation to supplement incomplete or incorrect discovery responses.  *See Abrahamsen v. Trans-State Exp., Inc.*, 92 F.3d 425, 428 (6th Cir. 1996) (recognizing that the continuing obligation to supplement discovery extends to documents that a party did not have at the time of initial disclosures); *Taylor v. Union Institute*, 30 Fed. Appx. 443, 451 (6th Cir. 2002) (recognizing the duty to supplement incomplete or incorrect discovery responses).  Defendant's best-defense-is-a-good-offense rationale posits otherwise and attempts to place on Plaintiff a burden and consequent blame that do not exist.  *See* Fed. R. Civ. P. 26(e).  And at least in this instance, it appears that Plaintiff in fact requested ongoing general supplementation in its first set of discovery interrogatories and document requests, as well as specifically during the Fletcher deposition (Fletcher Dep. at 64), and apart from the other specific discovery supplementation requests Plaintiff made (e.g., discovery in regard to other male managers who took FMLA leave).

Having concluded that Defendant's flawed rationale cannot enable Defendant to avoid

the merits of the sanctions motion, the Court now turns to the substance of Plaintiff's motion. Defendant attacks Plaintiff's reliance on Ohio's spoliation law, arguing that Plaintiff inappropriately suggests that the elements of the state tort govern a Rule 37 sanction decision. Defendant is correct that Plaintiff has not pled a spoliation claim in this case and that the Federal Rules should govern the Court's inquiry, but Defendant fails to distinguish the application of state spoliation law to destroyed evidence sanctions in *Nationwide Mutual Fire Insurance Company*, 174 F.3d 801 (6th Cir. 1999). In fact, in characterizing the elements of state-based spoliation law as "largely irrelevant here," Defendant implicitly concedes that these elements are partially relevant here. (Doc. # 26, at 9.)

The Sixth Circuit has recognized that "[o]ur system of discovery was designed to increase the likelihood that justice will be served in each case, not to promote principles of gamesmanship and deception in which the person who hides the ball most effectively wins the case." *Abrahamsen*, 92 F.3d at 428-29. Guided by this principle and the mandates of the discovery rules discussed above, the Court will address each category of discovery at issue.

***Invoices used by Fletcher.*** Defendant's tardy disclosure of this material removes this discovery from the spoliation realm and into a failure to supplement inquiry. Defendant's eventual disclosure of the invoices, however, does not excuse the fact that such disclosure was dilatory. Defendant posits that it did not have to turn the invoices over to Plaintiff, in part because Plaintiff did not request supplementation during the discovery period, but that it did so only to terminate the destruction-of-evidence allegation. The suspect timing of Defendant's post-motion supplementation suggests improper conduct. The documents were in Defendant's possession and should have been turned over far before they were.

Defendant's violation of its duty to supplement in a timely manner was neither harmless nor substantially justified. This Court therefore finds Defendant's conduct to be sanctionable. The eventual disclosure of the invoices apparently mitigates against any lasting prejudice to Plaintiff, however, as Plaintiff has neither requested re-opening of the summary judgment briefing and/or depositions. But there is harm to Plaintiff in that he could not conduct depositions with this material or otherwise rely on the invoices in his summary judgment briefing. Thus, the Court in its discretion declines to impose the sanction of excluding Defendant from relying on this evidence. In lieu of that sanction, the Court **ORDERS** that Defendant shall pay Plaintiff's reasonable expenses, including attorneys' fees, associated with the motion for sanctions and its related reply memorandum. If the parties cannot agree on the amount of this sanction, Plaintiff should submit to this Court a properly supported application for his attorneys' fees and costs, and the Court will determine the sanction amount.

*Month-End Invoice Reports.* Part of the decision to terminate Plaintiff was allegedly based on review of month-end reports for April, May, and June 2004, the first two of which Defendant has never turned over to Plaintiff. Defendant argues that Plaintiff failed to ever specifically request the month-end invoice reports for April and May 2004. In making this argument, Defendant ignores the scope of Plaintiff's discovery request and again improperly places on Plaintiff a duty to remind or compel Defendant of its continuing obligations. Defendant also ignores that because the reports provided information reviewed and involved in the termination decision, they constitute material that Defendant may use to support its defenses under Rule 26(a)(1)(B). Such material is a mandated initial disclosure subject to an ongoing duty of supplementation or correction. Fed. R. Civ. P. 26(a)(1)(B) & (e)(1).

Equally of concern is that Defendant avoids providing a definitive answer as to what happened to the reports, whether they were or were not destroyed, and, if they were, when and why they were destroyed. Instead, Defendant offers the explanation that it appears that the April and May 2004 documents *might* have been lost when Defendant converted over to a new computer system.

Defendant argues that Plaintiff has failed to demonstrate that Defendant intentionally destroyed this evidence. But such an argument places the burden on Plaintiff to prove facts that are within only Defendant's control, and Defendant's briefing notably and coyly avoids the issue of whether these records do in fact still exist in any form.[1] What is clear is that Defendant apparently changed its computer system after it knew of probable litigation involving Plaintiff and that, following the installation of the new system, Defendant apparently asserts that it cannot account for the evidence.

The Court is hardly satisfied with Defendant's non-explanation in its memorandum in opposition. If the records exist, then Defendant should know this and must produce them. If the records no longer exist in any form, then Defendant should be able to provide this answer and an

---

[1] Defendant states:

> Instead of engaging in a dialog with Defendant to determine whether these particular invoice reports are available, and if not, what happened to them, Plaintiff ignored the issue for several months. Now Plaintiff alleges, based on nothing other than his own assumption, that the reports were intentionally destroyed. Even assuming that the reports from April and May 2004 are no longer available electronically, there is absolutely no evidence that they were intentionally destroyed, or that they were destroyed at some time after January 21, 2005, when [Defendant] first became aware of potential litigation with Plaintiff.

(Doc. # 26, at 13.)

explanation as to how and why the records were destroyed–and by whom. To avoid the answer by blaming Plaintiff at this juncture creates an inference of gamesmanship that disturbs this Court. The Court therefore **ORDERS** Defendant to produce at the final pretrial conference: (1) an answer as to whether the April and May 2004 material exists; (2) if the answer is yes, to turn over this material to Plaintiff at or before the final pretrial conference and to explain the delay to this Court's satisfaction; and (3) if the answer is no, to explain to this Court's satisfaction how these circumstances came about and why the Court should not impose sanctions.

*Fletcher's Investigation Notes.* After initially complaining of their presumed destruction, Plaintiff later complains that Defendant has refused to disclose notes that Fletcher made during his investigation that he then used to compile his investigation summary. Defendant responds by explaining that the notes still exist but that Defendant continues to assert its standing objection to production based on attorney-client privilege. Plaintiff has never moved to compel production of the notes and cannot now complain of their non-disclosure. Although Plaintiff presents an intriguing argument that Defendant is improperly attaching the privilege to material prepared outside the direction of counsel, Plaintiff must first present that argument in a motion to obtain the discovery and not in an initial motion for sanctions. The Court therefore concludes that this discovery dispute presents no cause for sanctions at this time. The Court is concerned over the allegations Plaintiff has made, however, and will revisit this issue with the parties at the upcoming final pretrial conference.

*E-Mails.* In his discovery requests, Plaintiff sought to obtain copies of all e-mails related to him. Defendant apparently provided some e-mail relating to Plaintiff's termination and objected to additional discovery on the ground that the request was overbroad. In his reply

10

memorandum, Plaintiff indicates that "[i]f Defendant's position is that it does not intend to use such emails to support its defenses, Plaintiff will withdraw its motion for sanctions on this issue . . . [and] will file a motion in limine concerning this class of evidence." (Doc. # 29, at 9.) The Court is concerned that Plaintiff may be reading too much into Defendant's memorandum in opposition, but it does appear that Defendant is representing that it has disclosed all the relevant emails upon which it will rely. The sanctions issue is therefore apparently moot, although the Court will also revisit this issue at the final pretrial conference.

*__Time and Payroll Records.__* Defendant allegedly terminated Plaintiff in part because Plaintiff was forcing employees to work off the clock. Plaintiff argues that Defendant's failure to turn over the time and payroll records of the allegedly wronged employees amounts to a failure of the Rule 26(a) requirement that a party provide

> without awaiting a discovery request . . . a copy of, or description by category or location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment.

Fed. R. Civ. P. 26(a)(1)(B). Plaintiff asserts that Defendant's failure to supplement this incomplete disclosure then violates Rule 26(e)(1).

Selectively focusing only on Plaintiff's document requests, Defendant responds by asserting that because Fletcher never reviewed the records at issue in making the decision to terminate Plaintiff, they fall outside Plaintiff's request for "all documents consulted, reviewed or relied upon in making the decision to terminate Plaintiff." (Doc. # 26, at 13.) This may be correct, but the important issue is whether the material *also* falls outside the mandated Rule 26(a)(1)(B) disclosure. To meet this exclusion, Defendant cannot use these records to support its defenses.

11

Consequently, if no obligation to produce these records existed–i.e., Defendant did not rely on them so as to fall within Plaintiff's discovery request and Defendant is not going to rely on them so as to fall within Rule 26(a)(1)(B)–then Defendant had and has no Rule 26(e) duty to supplement. *See, e.g.*, *In re Air Crash Disaster*, 86 F.3d 498, 539 (6th Cir. 1996) ("Rule 26(e)(2) requires that a party supplement a discovery response in certain circumstances. It does not require that a party volunteer information not fairly encompassed by the earlier request.").

In his reply memorandum, Plaintiff states:

> If Defendant's position is that it does not intend to use such payroll records to support its defenses, including time records and payroll summaries of employees whose time cards were allegedly altered, Plaintiff will withdraw its [*sic*] motion for sanctions on this issue and will file a motion in limine concerning this class of evidence if necessary.

(Doc. # 29, at 8.) The Court therefore recognizes that Plaintiff has withdrawn this aspect of his motion if Defendant will not rely on the material in dispute. The Court also recognizes that Defendant *cannot* rely on the time and payroll records at issue without violating its mandated Rule 26 discovery obligations and risking incurring sanctions. Accordingly, this sanctions issue is withdrawn, or moot, unless Defendant at some point attempts to rely upon the time and payroll records.

### III. Defendant's Motion to Strike and Motion for Attorneys' Fees

In its memorandum in opposition to Plaintiff's sanctions motion, Defendant also moves this Court to strike Plaintiff's affidavit and to award attorneys' fees. In regard to the motion to strike, Defendant argues that the affidavit Plaintiff submitted with his sanctions motions is in effect an impermissible sur-reply to the summary judgment briefing. (Doc. # 24, Ex. D. May Aff.) Defendant explains that "[e]ven a cursory review of Plaintiff's affidavit reveals that it is

entirely unnecessary to the Motion to Compel [*sic*]. Therefore, the only possible reason for submitting it is for Plaintiff to get before the Court his response to Pilot's asserted non-discriminatory reasons for his termination." (Doc. # 26, at 14.) Regardless of the correctness of Defendant's characterization of Plaintiff's motives, this Court is confined to considering only properly submitted summary judgment evidence when addressing the pending motion. Plaintiff's October 11, 2006 affidavit was not submitted with the summary judgment briefing, is not proper summary judgment evidence, and will not be considered by the Court in its summary judgment decision. Accordingly, the Court **DENIES** Defendant's motion to strike as moot. (Doc. # 26.)

In regard to the motion for attorneys' fees, Defendant asserts that it is entitled to such an award under Rule 37(a)(4)(B) because Plaintiff acted without good faith. But it is irrelevant that some of Plaintiff's initial allegations regarding the destruction of evidence were flawed. Subdivision (a)(4)(B) applies only to motions filed under Rule 37(a), and Plaintiff's motion falls under Rule 37(c)(1). There is no basis for applying an inapplicable standard to Plaintiff's motion. Moreover, as discussed above, Plaintiff's motion was not without some merit. The Court therefore **DENIES** Defendant's Rule 37(a)(4)(B) motion. (Doc. # 26.)

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for sanctions (Doc. # 24), **DENIES** Defendant's motion to strike (Doc. # 26), and **DENIES** Defendant's motion for attorneys' fees (Doc. # 26). The Court also **ORDERS**:

(1) If necessary, Plaintiff shall submit a properly supported application for his attorneys' fees and costs associated with bringing the motion for sanctions.

(2) Defendant shall provide an answer at the final pretrial conference as to whether the April and May 2004 reports exist. If the answer is yes, Defendant shall turn over this material to Plaintiff at or before the final pretrial conference and shall explain the delay to this Court's satisfaction. If the answer is no, Defendant shall explain to this Court's satisfaction how these circumstances came about and why the Court should not impose sanctions.

**IT IS SO ORDERED**.

                                              /s/ Gregory L. Frost
                                    GREGORY L. FROST
                                    UNITED STATES DISTRICT JUDGE