UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SCOT MAY,

        Plaintiff,                       Case No. 2:05-cv-918
                                        JUDGE GREGORY L. FROST
     v.                             Magistrate Judge Terence P. Kemp

PILOT TRAVEL CENTERS LLC,

        Defendant.

**OPINION AND ORDER**

This matter is before the Court for consideration of Defendant's motion for summary judgment (Doc. # 19), Plaintiff's memorandum in opposition (Doc. # 20), and Defendant's reply memorandum (Doc. # 23). For the reasons that follow, the Court finds Defendant's motion for summary judgment not well taken.

**I.  Background**

Defendant, Pilot Travel Centers LLC, is a nationwide retailer that operates gas stations and fast food restaurant franchises. Plaintiff, Scot May, worked for Defendant since 2000. At the time of the events giving rise to this lawsuit, Plaintiff worked as a restaurant general manager for a Wendy's franchise at one of Defendant's Columbus, Ohio locations.

Plaintiff's duties as general manager included the timely entry of vendor invoice information into a computerized system that would enable the corporate office to pay vendors. Plaintiff was also responsible for complying with Defendant's overtime policy, which provided that all employees who worked in excess of forty hours per week received overtime compensation. To enable Plaintiff to correct timekeeping errors, Plaintiff had access to

1

Defendant's computerized records, which meant that Plaintiff could manually adjust employees' hours.  As part of his compensation package for fulfilling these and other duties, Plaintiff was eligible for a bonus that depended, in part, on Defendant's measurement of his performance on a weekly, monthly, and quarterly basis.  One factor involved in the bonus calculation was the restaurant's financial performance, so that a higher quarterly profit produced a higher bonus.  Another factor was whether Plaintiff managed labor costs within budget, which meant that preventing overtime pay from exceeding the budget meant a higher bonus for Plaintiff.

While serving as general manager, Plaintiff met with Regional Manager Richard Fletcher in May 2004.  Plaintiff submitted a request for leave under the Family and Medical Leave Act ("FMLA") related to the birth of his son.  Fletcher approved the leave–the parties debate whether he did so begrudgingly–and Plaintiff's leave commenced on June 17, 2004.

In July 8, 2004, while Plaintiff was on leave, one of Defendant's food vendors, Sygma, contacted Defendant's accounting department regarding unpaid invoices.  Defendant investigated the issue, and on July 9 Fletcher forwarded an e-mail containing the results of that investigation to Plaintiff and facility General Manager Brad Van Fleet.  Thereafter, on July 12, Fletcher visited the Columbus facility that Plaintiff helped manage to investigate the complaints.  Defendant asserts that after allegedly reviewing invoices and monthly invoice reports, Fletcher discovered a pattern of "rolling" invoices, or delays when entering the costs of delivered goods into the computer until a subsequent time frame in order to artificially inflate a restaurant's apparent weekly profits, so that, for example, an April invoice was not paid until May.  The rolled invoices were not paid until July, which was in the next quarter.  Fletcher allegedly learned that despite being on leave, Plaintiff was still processing the invoices during periodic

visits to work.[1] Fletcher also spoke with employees who allegedly complained that Plaintiff had altered their time records by deducting time for breaks they never took and by requiring them to work off the clock in order to avoid overtime compensation.

Fletcher met with Plaintiff on July 13, 2004 and informed Plaintiff of his findings. Plaintiff admitted to entering three late invoices, but denied any overtime impropriety. Fletcher informed Plaintiff to continue his leave without reporting for any work while Fletcher continued the investigation. Fletcher then reported his rolling-invoices findings to Defendant's Human Resources Manager Al Jecker, who approved Fletcher's recommendation to terminate Plaintiff. Fletcher accordingly terminated Plaintiff on August 2, 2004.

Plaintiff subsequently initiated this lawsuit in the Franklin County Court of Common Pleas on September 19, 2005, asserting claims for FMLA retaliation and interference claims. (Doc. # 1, Ex. A.) Plaintiff claims that, in retaliation for his taking FMLA leave, Defendant falsely accused him of misconduct and terminated his employment. Defendant removed the action to this federal forum on October 5, 2005. (Doc. # 1.) Pursuant to the Preliminary Pretrial Order (Doc. # 9) and the Scheduling Order (Doc. # 10), the discovery period ended on July 14, 2006, and Defendant thereafter filed the pending motion for summary judgment (Doc. # 19). The parties have completed their summary judgment briefing, and the motion is now ripe for disposition.

The Court's decision on that motion has been delayed, however, by the fact that after the parties had concluded briefing on the summary judgment motion, Plaintiff then filed an October

---

[1] The parties disagree whether Plaintiff's working while on leave was to conceal wrongdoing or to assist his temporary replacement with the performance of his duties.

23, 2006 motion for sanctions for spoliation of evidence. (Doc. # 24.) Because disposition of the sanctions motion could affect the summary judgment decision, the Court held its summary judgment decision and ordered expedited briefing on the sanctions motion. (Doc. # 25.) Targeting various items of undisclosed and/or missing evidence, Plaintiff asked this Court to impose any number of sanctions including but not limited to default judgment against Defendant, to an adverse jury instruction concerning destroyed evidence, to the exclusion of testimony, as well as awarding attorneys' fees and costs. In a December 28, 2006 Order (Doc. # 30), the Court dismissed several of Plaintiff's withdrawn arguments, found that Defendant had engaged in sanctionable conduct in regard to the disclosure of invoices, and ordered Defendant to compensate Plaintiff for the filing of his motion and related memoranda.

As noted in the prior Order, the Court was also concerned with Defendant's failure to deliver to Plaintiff month-end invoice reports and with Defendant's evasive comments concerning these reports. Accordingly, the Court ordered Defendant to produce answers and the reports, if available, at the January 18, 2007 final pretrial conference. The Court left open the issue of whether sanctions were warranted for Defendant's behavior until the Court could obtain the answers it sought.

## II. Discussion

### A. Standard Involved

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must therefore grant a motion for summary

judgment here if Plaintiff, who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to his case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the non-moving party, and that party must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52.)

**B. Analysis**

Plaintiff's two-count Complaint asserts a claim for retaliation for exercising FMLA rights and a claim for interference with FMLA rights.[2] The Court shall address each cause of action in

---

[2] The Court recognizes both that Plaintiff's Complaint does not specify the precise statutory provisions under which he is proceeding and that Plaintiff clarifies the issue in his memorandum in opposition. (Doc. # 20, at 9-10.) Such precise pleading might indeed be difficult. For example, although not always consistent in its description of the FMLA, the Sixth Circuit has explained that § 2615(a)(1) and (a)(2) *both* constitute retaliation provisions. *Humenny v. Genex Corp.*, 390 F.3d 901, 905 (6th Cir. 2004). Another judge within this district has previously noted the "current, confusing state of FMLA law" and attempted to reconcile the problematic use of applying the labels "interference," "discrimination," and "retaliation" to FMLA claims. *Bradley v. Mary Rutan Hosp. Ass'n*, 322 F. Supp. 2d 926, 938 (S.D. Ohio 2004).

turn.

### *1. Retaliation*

To establish a *prima facie* case of retaliation under the FMLA here, Plaintiff must prove that (1) he availed himself of a protected right under the FMLA, (2) Defendant knew of his exercise of a protected right, (3) he was adversely affected by an employment decision made by Defendant, and (4) there was a casual connection between the exercise of the protected right and the adverse employment action. *See Hoge v. Honda of America Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004) ( identifying " 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)"); *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990). *See also DeBoer v. Musashi Auto Parts, Inc.*, 124 Fed. Appx. 387, 391, 2005 WL 434526, at *3 (6th Cir. Feb. 25, 2005); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001).

Defendant asserts that it is entitled to summary judgment because Plaintiff cannot satisfy the fourth prong of the inquiry by demonstrating the requisite casual connection. To support this argument, Defendant correctly points to Plaintiff's deposition testimony in which Plaintiff conceded that there were no statements made to him indicating that his employment was terminated as a consequence of his taking FMLA leave. (May Dep. at 194.) Plaintiff also agreed that he had never seen any documents suggesting that his FMLA leave was responsible for his termination. (May Dep. at 194.) Absent such evidence, Defendant argues, Plaintiff is left

---

That judge concluded that a single framework for all FMLA claims made sense based, in part, on the conclusion that "courts should not have to pigeonhole [a] plaintiffs' claims, fit them under either the language of § 2615(a)(1) or (2), or create a seemingly new cause of action for each label." *Id*. at 940 n.16. This Court need not and will not attempt to untangle the FMLA quandary here, but simply notes that the Sixth Circuit has recognized both claims asserted regardless of the specific label and statutory provision involved and that the parties do not dispute the statutory basis for Plaintiff's claims.

only with only the timing of his termination and his own conclusory guess that he was fired for taking FMLA leave.

Suspect timing can provide indirect evidence of a casual connection to establish a *prima facie* case. *DeBoer*, 124 Fed. Appx. at 391, 2005 WL 434526, at *3; *Skrjanc*, 272 F.3d at 314. Although Defendant is correct that there are factors arguably undercutting the causal connection, such as the fact that the investigation into rolling of invoices arose from a vendor complaint as opposed to originating with Defendant, the Court cannot weigh the evidence and must resolve all inferences in favor of Plaintiff. Thus, the timing of Plaintiff's termination and the evidence described more fully below in the pretext discussion enable Plaintiff to survive the *prima facie* case hurdle.

But this is not to say that Plaintiff's claim necessarily survives summary judgment. After a plaintiff has established a *prima facie* case in such circumstantial evidence cases, this Court must then employ the familiar *McDonnell Douglas* burden-shifting framework. *See Hagan v. Warner/Elektra/Atlantic Corp.*, 92 Fed. Appx. 264, 267, 2004 WL 473990, at *3 (6th Cir. Mar. 10, 2004) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)); *DeBoer*, 124 Fed. Appx. at 391-92, 2005 WL 434526, at *4 (citing *Skrjanc*, 272 F.3d at 315). The Sixth Circuit Court of Appeals has explained the resulting inquiry:

> If a plaintiff demonstrates a *prima facie* case of . . . discrimination, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for the challenged employment actions. *McDonnell Douglas,* 411 U.S. at 802; *see also Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 574 (6th Cir.2003) (en banc) (*applying* McDonnell Douglas *analysis to age discrimination* claim); *Zambetti v. Cuyahoga Cmty. Coll.,* 314 F.3d 249, 255-56 (6th Cir.2002) (applying *McDonnell Douglas* analysis to reverse race discrimination claim). The defendant need only produce a legitimate, non-discriminatory reason; it need not persuade the court that this reason actually motivated the employment actions in question. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142-43,

> 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).  Once the defendant meets its burden of
> producing a legitimate, non-discriminatory reason for its challenged actions, the
> burden shifts to the plaintiff to demonstrate that the asserted justification is mere
> pretext for discriminatory motives. *Sutherland v. Mich. Dep't of Treasury,* 344
> F.3d 603, 615 (6th Cir.2003).  The plaintiff may meet this burden by showing that
> the reason offered by the defendant for the challenged employment actions (1) has
> no basis in fact, (2) did not actually motivate the actions, or (3) was insufficient to
> warrant the actions. *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078,
> 1084 (6th Cir.1994).  The burden of persuading the trier of fact that defendant's
> asserted justification is pretextual ultimately rests with the plaintiff. *Anthony v.
> BTR Auto. Sealing Sys., Inc.,* 339 F.3d 506, 515 (6th Cir.2003).

*Koval,* 86 Fed. Appx. at 66, 2004 WL 74651, at *4 (footnote omitted).  *See also DeBoer*, 124 Fed. Appx. at 391-92, 2005 WL 434526, at *4.  Applying this standard, this Court must find that Plaintiff's claim of FMLA retaliation survives.

Defendant has produced evidence that it terminated Plaintiff because he was involved in rolling invoices and in working employees off the clock.  As violations of company practices, these are legitimate, non-discriminatory business reasons.  This leads to the related issue of whether Plaintiff has then produced evidence to demonstrate that Defendant's alleged reasons are in reality pretextual covers intended to mask improper action.

Plaintiff argues that Defendant's reasons have no basis in fact and that they did not actually motivate his termination.  Plaintiff relies upon the timing of the events at issue here to assert pretext, but the timing alone is not dispositive because "the FMLA does not give an employee who invokes the protection of the statute any greater rights to employment than the employee would otherwise have had." *Skrjanc*, 272 F.3d at 316 (citing 29 U.S.C. § 2614(a)(3)(B); *Hubbard v. Blue Cross Blue Shield Ass'n,* 1 F. Supp. 2d 867, 875 (N.D. Ill. 1998)).  As in *Skrjanc*, "temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual."

8

*Skrjanc*, 272 F.3d at 317. *See also Coulter v. Deloitte Consulting, L.L.C.*, 79 Fed. Appx. 864, 867, 2003 WL 22514343, at *4 (6th Cir. Nov. 4, 2003).

      Plaintiff therefore attempts to establish pretext through a variety of additional means. Plaintiff argues, for example, that Defendant admits that it did not terminate or otherwise discipline other similarly situated employees who had been dilatory in processing invoices. To support this contention, Plaintiff points to his supervisor, Brad Van Fleet. As a retail store/fuel center manager, Van Fleet did not hold the same position as restaurant manager Plaintiff. There is also no evidence that Van Fleet had been previously disciplined or counseled for infractions of the same sort involved here, whereas Plaintiff had incurred such prior discipline. There is also evidence that Van Fleet could not have engaged in similar invoice-rolling conduct because an outside company conducts his inventory and verifies his invoices. Thus, Plaintiff's reliance on Van Fleet arguably fails to constitute a showing by Plaintiff that Defendant treated him differently than a similarly situated employee because of his invocation of his FMLA rights.

      Plaintiff next asserts that he can establish pretext because Fletcher declined in his deposition to state that he believed Plaintiff had paid invoices late with a sinister motive; Fletcher in fact testified that he did not know what Plaintiff's motives were for the late payment. But this does not mean that there is no lack of improper or fraudulent motive. What it does mean is that Fletcher apparently felt at his deposition that he could not discern Plaintiff's motives. It also means that Fletcher's deposition was curiously at odds with his conclusion in his investigation report–prepared *after* the termination–in which he stated that "it seemed apparent to me that Plaintiff . . . was deliberately and repeatedly rolling invoices from one month to another, covering up problems that would have shown themselves in low profit margins at his

9

restaurant." (Jeckers Dep., Ex. 3, at 3 (original page number 0443).)

But semantics aside, and even assuming *arguendo* that Van Fleet is not a similarly situated individual, other evidence before this Court supports an inference of pretext. There is, for example, Defendant's proffered reason of overtime. Jecker testified in his deposition that the decision to terminate Plaintiff was based *entirely* upon the rolling invoices issue and that he did not know at the time that the overtime issue even existed. (Jecker Dep. at 71-72.) Jecker also testified that he did not know that Fletcher was adding the overtime issue to the termination report. (Jecker Dep. at 73.) This undercuts Defendant's portrayal of the decisionmaking process as addressing both termination justifications; it also raises the question of whether one potentially pretextual reason undercuts another proffered reason.

To support its claim that Plaintiff must demonstrate that *both* the invoice rolling and overtime justifications are pretextual, Defendant directs this Court to case law holding that when an employer offers multiple reasons for discharging a plaintiff, that plaintiff must show that each reason was pretextual. *See, e.g., Bojd v. Golder Associates, Inc.*, No. 06-12209, 2006 WL 3780645, at *1 (11th Cir. Dec. 26, 2006) (citing *Chapman v. AI Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000)). As Defendant notes, the Seventh Circuit has generally agreed with this approach. *See Perkins v. G.E. Capital Auto Financial Services, Inc.*, 6 Fed. Appx. 320 (7th Cir. 2001) ("If an employer offers multiple reasons for its adverse employment decision, the plaintiff must demonstrate that each reason is pretextual in order to survive summary judgment."). But the Seventh Circuit has also recognized that "there may be cases where the multiple reasons offered by the defendant 'are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the plaintiff could withstand summary judgment' by showing the pretextual

10

nature of just one reason." *Powell v. Rumsfeld*, 42 Fed. Appx. 856, 860, 2002 WL 1752233, at *3 (7th Cir. July 24, 2002) (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 70 (7th Cir. 1995)). Similarly, the Tenth Circuit has held that discrediting one proffered reason, such as the dominant reason, can cast doubt on all remaining reasons, even if they have not been discredited. *See Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, 1127 (10th Cir. 2005). The Third Circuit has offered a notable explanation for this more measured approach:

> We do not hold that, to avoid summary judgment, the plaintiff must cast doubt on each proffered reason in a vacuum. If the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder. That is because the factfinder's rejection of some of the defendant's proffered reasons may impede the employer's credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons, even if no evidence undermining those remaining rationales in particular is available.

*Fuentes v. Perksie*, 32 F.3d 759, 764-65 n.7 (3d Cir. 1994). This Court agrees with the approach taken by the majority of courts of appeals that have addressed the issue.

It is therefore notable that the overtime justification was included in Plaintiff's separation notice (Jecker Dep. Ex. 7) and offered in this litigation, despite having never been submitted through Defendant's decisionmaking process (i.e., from Fletcher and to Jecker). After-the-fact justifications can demonstrate pretext. *Plotke v. White*, 403 F.3d 1092, 1103 (10th Cir. 2005); *Wheet v. Greenwood Ford, Inc.*, 124 F.3d 201, 1997 WL 589270, at *3 (6th Cir. 1997) (unpublished table decision). This Court therefore concludes that a qualitative assessment of Defendant's reasons (and the intertwined investigation behind those reasons) means that the failure of the overtime justification calls into question the rolling invoices justification.

Defendant defends its investigation by citing to the honest belief rule. It is well settled that to establish pretext, a "plaintiff must allege more than a dispute over the facts upon which

11

his discharge was based. [He] must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.,* 258 F.3d 488, 493-94 (6th Cir. 2001) (citing *Smith*, 155 F.3d at 806-07). The Court of Appeals has therefore set forth the essential inquiry for a court:

> In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.
>
> If there is no material dispute that the employer made a "reasonably informed and considered decision" that demonstrates an "honest belief" in the proffered reason for the adverse employment action, the case should be dismissed since no reasonable juror could find that the employer's adverse employment action was pretextual.

*Braithwaite*, 258 F.3d at 494 (internal citation omitted) (quoting *Smith*, 155 F.3d at 807). Assuming that the foregoing rule applies here, there is a material dispute over whether Defendant made a reasonably informed and considered decision that demonstrates an honest belief in the proffered reasons for the treatment Plaintiff received. Simple mistakes or a lack of competence do not demonstrate pretext, but willful, unreasonable errors or atypical incompetence can indicate that a discriminatory animus motivated Defendant.

This Court will not second-guess a reasonable but flawed investigation. But at the same time, the Court cannot hold as a matter of law that the notably spartan investigation involved here could reasonably inform a considered decision. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 809 (6th Cir. 1998) ("An employer's strategy of simply tossing out a number of reasons . . . in the hope that one of them will 'stick' could easily backfire . . . . [A] multitude of suspicious explanations may itself suggest that the employer's investigatory process was so questionable

that any application of the 'honest belief' rule is inappropriate"). Although Fletcher spoke with employees who alleged that they had been worked off the clock, he did not review the employees' time sheets or electronic records. Fletcher nonetheless concluded that Plaintiff "changed the time cards of several employees to make sure that they did not get paid overtime resulting in a violation of working employees off the clock." (Jecker Dep. Ex. 8, Employee Corrective Action Form.) Defendant's sole reliance on word of mouth while excluding any inquiry into the actual paper trail presents a curious investigatory technique that could be a dangerously deficient investigation *or* a fortuitous opportunity for Defendant to terminate an unwanted employee based on a pretextual reason without having to confront substantive evidence. And if a juror finds the overtime investigation so flawed as to demonstrate pretext, the juror may in turn disbelieve Defendant's credibility on the rolling of invoices justification. Even if Plaintiff admitted to processing three invoices late, Plaintiff can nonetheless prevail at trial if these acts did not actually motivate Defendant to terminate him and the FMLA leave did.

While relying on the overtime allegations to defend this case, Defendant also complains that Plaintiff cites the overtime issue when Jecker did not rely on it to approve Plaintiff's termination. But this ignores the dual reasons given to Plaintiff for his firing and Fletcher's own dual reasoning, as well as the fact that, as previously noted, it raises the specter of a suspicious *post hoc* justification.

The evidence before this Court suggests that a reasonable juror could conclude that *both* of Defendant's reasons are tainted with potential pretext and that the only apparent remaining reason for Plaintiff's termination would then be FMLA-related impropriety on Defendant's part. Although the suspect timing of Plaintiff's termination fails by itself to establish pretext, the issue

13

of timing combined with the factors described above[3] constitute sufficient evidence to allow a jury to determine whether Defendant's proffered reasons are valid. Although his evidence is not unlike the combination of evidence in *DeBoer* that "barely qualifie[d] to demonstrate pretext . . . it is enough to submit the case to a jury." *DeBoer*, 124 Fed. Appx. at 395, 2005 WL 434526, at *7. Like in *DeBoer*, there has been a showing here that circumstances exist that, considered *with* the suspect timing of Plaintiff's leave and termination, tend to prove that an illegal motivation was *more* likely than a permissible rationale offered by an employer. *Id.* at 393-94, 2005 WL 434526, at *5-6 (rejecting timing alone as sufficient evidence to demonstrate pretext, but accepting as sufficient a combination of timing and other, independent suspicious circumstances).

In sum, drawing as the Court is required to do all reasonable inferences in Plaintiff's favor, this Court must conclude that Plaintiff has produced sufficient evidence and material disputes of fact so that his case can go before a jury. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's retaliation claim.

### 2. *Interference*

Plaintiff also asserts a claim of interference with FMLA rights, which the Sixth Circuit has often described as falling under 29 U.S.C. § 2615(a)(1). *See Hoge*, 384 F.3d at 244 (identifying "the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1)"). To establish a *prima facie* case of interference under the FMLA here, Plaintiff must prove that (1) he was an eligible employee, (2) Defendant was an employer, (3) he was entitled to FMLA

---

[3] Because these factors prove dispositive of the summary judgment motion, the Court need not and does not reach Plaintiff's remaining pretext arguments, such as his challenges to the factual allegations purportedly underlying his dismissal.

leave, (4) Defendant had notice of his intention to take leave, and (5) Defendant denied him FMLA benefits to which he was entitled. *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005); *Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). The first four elements are not in dispute; the parties' disagree as to the fifth element.

Defendant moves for summary judgment on the grounds that Plaintiff's termination was not related to his FMLA leave. Plaintiff in turn argues that he was terminated based solely on his FMLA leave and that the termination interfered with his FMLA benefits, which included his right to return to work. Because the same analysis set forth in the retaliation section above governs the termination issue here, Defendant is also not entitled to summary judgment on Plaintiff's interference claim.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion for summary judgment. (Doc. # 19.)

**IT IS SO ORDERED.**

    /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE